Argued and submitted March 18, reversed and remanded for
proceedings not inconsistent with this opinion April 27, 1981

In the Matter of the Compensation of
George A. Everts, Claimant.

EVERTS,
*Petitioner,*

*v.*

STATE ACCIDENT INSURANCE FUND
CORPORATION,
*Respondent.*

(WCB No. 79-10,988, CA 19589)

627 P2d 32

Robert L. Engle, Woodburn, argued the cause for peti-
tioner. With him on the brief were Eichsteadt, Bolland,
Engle, Schmidtman & Rohrer, and John C. Graffe, Cer-
tified Law Clerk, Woodburn.

Darrell E. Bewley, Appellate Counsel, State Accident
Insurance Fund Corporation, Salem, argued the cause for
respondent. With him on the brief were K. R. Maloney,
General Counsel, and James A. Blevins, Chief Trial Coun-
sel, State Accident Insurance Fund Corporation, Salem.

Before Buttler, Presiding Judge, and Warden and War-
ren, Judges.

BUTTLER, P. J.

**BUTTLER, P. J.**

Claimant appeals from a determination by the Workers' Compensation Board (Board) that the claimant's high blood pressure condition is not compensable. On *de novo* review, we reach a different conclusion.

While on a business trip in September, 1974, claimant, a 58-year-old businessman, was attacked by an assailant in the Portland International Airport parking lot. He suffered a concussion, injuries to the neck and shoulder, and injury to a finger on the right hand. Claimant was hospitalized for two days. Two weeks later, claimant was readmitted, the doctor noting "the patient has been confused since that time intermittently, inappropriate * * *." In December, another doctor noted a speech impediment and severe headaches which had begun only after the incident. Claimant began to be treated with medication for abnormally high blood pressure levels in December, 1976. After SAIF investigated the necessity for that medication, it denied responsibility for what it concluded was a noncompensable condition. The Board and referee affirmed the denial.

The primary medical evidence in support of the compensability of the claim for high blood pressure resulting from the injury is that of claimant's treating physician, Dr. Asper, who noted the problem in his reports of March, 1977, July, 1978, and July, 1979. That doctor, who had been claimant's personal physician for 20 years, summarized his diagnosis in March, 1980:

"On January 7, 1977 B/P was still normal at 120/70; consequently treatment dosage was decreased to every other day.

"Since that time, on minimal medication, B/P has varied from 120/80 to 160/90.

"[Claimant's] pattern of hypertension had been that of reacting to stress with brief elevations until the head trauma associated with the accident in 1974. Since that time, his level of stress has been much greater due to unresolved orthopedic injuries to hand and neck. The cerebral injury seems to have resolved - unless his lowered stress tolerance is a manifestation of persistant *[sic]* brain change. Certainly, in my opinion, the hypertension problem, which required treatment only after the trauma, is

directly related to that injury and the resultant stress. [Claimant] has made improvement, but I believe he will require periodic evaluation and control of blood pressure permanently."

The Board and referee relied upon the medical opinions of two other doctors. One doctor was asked by letter whether hypertension can result from a head injury. After reviewing the file as it existed in September, 1979, that physician stated:

"I have reviewed Dr. Asper's report of July 16, 1979 and July 11, 1978. I suppose it is possible that hypertension could result from a head injury but it would be unusual, and, no, I don't think that the hydrocdiuril *[sic]* is our responsibility. The elavil might be our responsibility if there is some psychological problem associated with the injury and I suggest this has to be investigated. *I also suggest that someone else examine this patient with regard to the question of hypertension and possibly some investigation might be done with regard to this patient's past history of hypertension.* I don't personally feel that any direct connection has been made to the concussion this patient had and the elevation of his blood pressure." (Emphasis supplied.)

A second physician examined claimant briefly and reported in November, 1979:

"From the information that I have and in interviewing the patient, I would state that there is very little evidence that [claimant's] hypertension is related to his accident. [Claimant is] 64 years of age. He has been a heavy smoker and has been described as a Type A personality. *As the exact etiology of hypertension remains a medical mystery I cannot state definitely why he should develop hypertension such as he has done.* Hypertension can be aggravated at the time of acute stress or trauma but this is usually a transient thing and easily comes under control. In order for this to happen underlying diathesis for hypertension needs to be present. [Claimant's] hypertension is a developmental problem and has come on over a period of several months following the accident. He continued to smoke until recently which would aggravate his hypertension. He does not have any evidence of trauma to his renal vessels or any long-lasting central nervous system damage which sometimes has been related to the onset of hypertension.

"In summary, I feel that [claimant's] hypertension is that of chronic condition that has progressed with age as

the natural history of hypertension not related to his accident." (Emphasis supplied.)

Only the treating physician made his diagnosis and drew his final conclusions with the benefit of claimant's blood pressure level readings taken before and after the traumatic incident. Those readings demonstrate that although claimant did experience incidents of high blood pressure prior to the assault, his blood pressure levels after the incident were higher during periods of stress.

One Board member in dissent[1] gave greater weight in this case to the opinion of the treating physician. We also give greater weight to that medical opinion and conclude that claimant's condition is a compensable consequence of his industrial injury.

Reversed and remanded for proceedings not inconsistent with this opinion.

---

[1] "I respectfully dissent from the majority opinion of the Board as follows:

"I find that claimant's hypertension condition is compensable and give the greatest weight to the opinion of Dr Asper who has treated this claimant for over 20 years. Dr. Asper's records indicate that claimant had no preexisting hypertension condition before this industrial injury. Claimant did, however, have periods of time when his blood pressure was elevated, but always at these times claimant was under stress, i.e., claimant contemplating cateract surgery.

"Dr. Asper's opinion is that claimant's hypertension condition is related to his injury and secondary to the effects from that traumatic injury. I feel that the entire record in this case substantiates this opinion. After his injury, claimant returned to his regular occupation, a job with a great deal of stress and claimant managed to perform this work for two years before he was forced to retire, unable to handle the stree [sic] any longer. After this injury and secondary thereto, claimant developed hypertension that is permanent in nature. It isn't necessary that the injury be the sole reason for this condition. It is enough, under the law, that it contributed thereto. Dr. Asper supports the conclusion that it did."